NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ANTONIO RODRIGUEZ RIVERA,    )
    )
        Appellant,    )
    )
v.    )    Case No. 2D14-642
    )
STATE OF FLORIDA,    )
    )
        Appellee.    )
_____)

Opinion filed February 13, 2015.

Appeal from the Circuit Court for
Hillsborough County; Chet A. Tharpe,
Judge.

Howard L. Dimmig, II, Public Defender,
and Richard Sanders, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, for Appellee.

SILBERMAN, Judge.

In this Anders[1] appeal, Antonio Rodriguez Rivera seeks review of the

order revoking his community control for being out past curfew, being away from his

residence without permission, and living in a nonapproved area.  Because competent,

---

[1]Anders v. California, 386 U.S. 738 (1967).

substantial evidence supports the trial court's finding that Rivera willfully and substantially violated these terms of his community control, we affirm.

When Rivera was twenty-three years old, he had a relationship with a fourteen-year-old girlfriend which resulted in a pregnancy. Rivera entered guilty pleas to charges of lewd or lascivious battery and child abuse by impregnation. On June 28, 2013, the court sentenced Rivera to concurrent terms of two years of sex offender community control followed by sex offender probation.

Rivera met with his community control officer and was instructed regarding the conditions of supervision. One of those conditions precluded Rivera from living within 1000 feet of a school, child care facility, park, playground, or other place where children regularly congregate. See § 948.30(1)(b), Fla. Stat. (2013). Another condition imposed a curfew that required Rivera to remain confined to his approved residence between 10:00 p.m. and 6:00 a.m. See § 948.30(1)(a). Rivera was also required to perform community service. His whereabouts were monitored by a GPS bracelet.

Prior to his prosecution, Rivera had been living with his grandmother. However, her residence was in violation of the 1000-foot rule, so the court gave Rivera sixty days to find an approved residence. Rivera's family then moved to a home they believed was in compliance with the 1000-foot rule. However, Rivera's community control officer discovered that a neighbor within 1000 feet of the new home was registered as a home daycare provider. When Rivera's sixty days expired, his community control officer approved temporary lodging with another relative.

Shortly thereafter, Rivera traveled with his father to a junkyard in Pinellas County to get parts for his father's car without getting permission from his community

control officer. On September 17, 2013, Rivera's community control officer filed an affidavit of violation of community control which alleged two violations for failing to complete community service in July and August and two violations for leaving the county without permission and being out of his approved residence without permission. The trial court entered an order modifying the community control to include thirty days of jail time, which Rivera began serving at once. The court also granted Rivera a thirty-day extension of time in which to find an approved residence.

When Rivera was released from jail, he was homeless. Rivera's community control officer placed him in a location he had previously used for homeless sex offenders, which was a small parking lot on Channelside Drive in downtown Tampa. Because there was no shelter in the parking lot, Rivera's grandmother let him sleep there in her van. Rivera was given permission to return the van to his grandmother's home in the morning, take a shower, and go on with his day.

But Rivera could not abide this arrangement for long. At around 10:30 p.m. on October 16, 2013, Rivera went to his father's home to stay even though he had been told this was an unapproved location. Rivera's GPS monitor triggered an alarm at 10:35 p.m. because he was out past his 10:00 p.m. curfew at an unapproved location. The employee monitoring Rivera's GPS phoned Rivera and told him to go "home" to the Channelside parking lot, but Rivera refused and said he did not want to stay there alone. He was arrested a few hours later at his father's home.

On October 23, 2013, Rivera's community control officer filed an affidavit of violation of community control that alleged violations for being out past curfew, being away from his residence without permission, and living in a nonapproved area. The trial

- 3 -

court held an evidentiary hearing at which the State offered testimony in support of the facts set forth above and Rivera declined to call any witnesses. The court found that Rivera had committed the charged violations and that they were willful and substantial. The court revoked community control and sentenced Rivera to the lowest permissible sentence of 121.05 months in prison for lewd or lascivious battery and to a concurrent term of sixty months in prison for child abuse by impregnation.

In order to support a revocation of community control or probation, the State must prove a willful and substantial violation of the conditions of supervision by the greater weight of the evidence. Filmore v. State, 133 So. 3d 1188, 1193 (Fla. 2d DCA 2014). This court reviews this finding to determine whether it is supported by competent, substantial evidence. We review the trial court's decision to revoke supervised release for an abuse of discretion. Id.

We conclude that the court's finding of willful and substantial violations of the conditions of supervision was supported by competent, substantial evidence. The State presented testimony that Rivera was instructed that he could not live within 1000 feet of a school, child care facility, park, playground, or other place where children regularly congregate and that he had to remain confined to his approved residence between 10:00 p.m. and 6:00 a.m. The State also presented testimony that Rivera was aware that his father's home did not comply with the 1000-foot rule. Finally, the State presented testimony that Rivera went to his father's house after curfew and refused to return to his approved residence.

We recognize that Rivera's approved "residence" was a van in a parking lot in downtown Tampa, and we understand his reluctance to spend his nights living in

that manner. We are troubled by the fact that the terms of Rivera's community control have rendered him homeless. This does not appear to facilitate the goals of sex offender community control which are "treatment of the offender and the protection of society." State v. Coleman, 44 So. 3d 1198, 1200 (Fla. 4th DCA 2010); see generally Catharine Skipp, A Law for the Sex Offenders Under a Miami Bridge, Time, Feb. 1, 2010, http://content.time.com/time/nation/article/0,8599,1957778,00.html (discussing similar residency laws that rendered many sex offenders homeless in Miami).

This situation raises the question of whether Rivera's residency restrictions could be better tailored to avoid making him homeless. But because the evidence was sufficient to establish multiple willful and substantial violations of community control, we cannot say that the trial court abused its discretion in revoking community control.

Affirmed.


NORTHCUTT and MORRIS, JJ., Concur.